Filed 2/23/16  Souza v. Bureau of Real Estate  CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| DARRELL ANTHONY SOUZA, | C077024 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201380001443CUWMGDS) |
| v. | |
| BUREAU OF REAL ESTATE, | |
| Defendant and Respondent. | |

This appeal from the denial of a petition for a writ of administrative mandate arises from an order of the Real Estate Commissioner revoking plaintiff Darrell Anthony Souza's real estate broker license.  On appeal, Souza offers several challenges to the actions of the administrative agency (defendant Bureau of Real Estate; hereafter, the

1

Bureau)[1] and the trial court.  Finding no merit in any of Souza's arguments, we will affirm.

FACTUAL AND PROCEDURAL BACKGROUND

We take the following facts and background from the trial court's decision:

"Beginning in 2001, [Souza] and developer Ronald Malik (Malik) entered into various business transactions together.  A significant portion of those transactions concerned purchases by Malik through companies he owned, Van der Meer, LLC and MedCal, LLC (the LLC's), [of] land parcels in Modesto, in an area known as 'Sky Hawk.'  [Citation.]  In 2005, Malik made [Souza] manager of the LLC's.  [Souza]'s duties as manager were to assist Malik in purchasing the Sky Hawk properties without sellers knowing that the LLC's were owned solely by Malik. . . .

"[¶] . . . [¶]

"The Bureau produced a letter at the administrative hearing dated May 9, 2007, purportedly signed by Malik, addressing [Souza]'s compensation. . . .

"The May 9, 2007 letter states that it 'confirm[s] previous compensation agreements between ourselves.' . . .  The letter also states that [Souza] 'may record the appropriate documents' on Malik's property to 'secur[e] our previously agreed upon share of 5% of all Van der Meer and Medcal properties to yourself.'  [Citations.]

"[Souza], acting as the LLC's manager, created two Demand Promissory Notes, dated May 21, 2007, for $4 million each (Notes).  The Notes state that Van der Meer, LLC and Medcal, LLC promise to pay Sperry [Souza's company] this amount with interest immediately on demand.  The Notes also allow the Note holder to receive 5% of the gross sales price of any parcel securing the Note, if sold by the LLC.  The Notes state

---

[1]     At the time of the administrative proceedings, the Bureau was known as the Department of Real Estate.  For the sake of consistency, we will refer to the agency as the Bureau throughout our opinion.

that they are secured by deeds of trust and rely on the authorization in the May 9, 2007 letter. [Citations.]

"In May 2007 and January 2008, deeds of trust with assignment of rents (Deeds of Trust) were created between Medcal, LLC and Van der Meer, LLC as trustors and Sperry as beneficiary. [Citations.]

"On October 2, 2008, [Souza] recorded the two Deeds of Trust with Stanislaus County Recorder. Each deed of trust was attached to various parcels in Modesto and Stanislaus County. [Citations.]

"On October 22, 2008, [Souza] informed Malik about the Deeds of Trust recorded on the property. [Souza] sent Malik a letter on October 22, 2[0]08, stating that Malik owed Sperry $793,226.00, later reduced to [$]476,460.00 after crediting Malik for other monies. [Citations.] [Souza] . . . informed Malik that if Malik will 'pay the balance of 400-and-some thousand [monies owed to [Souza]], and I'll [sic] release the deeds of trust.' [Citation.]

"Malik then filed an action against [Souza] and Sperry in *Malik v. Souza*, Stanislaus County Superior Court Case No. 634008 (*Malik v. Souza*). Malik amended the complaint in July 2009. The First Amended Complaint alleged causes of action against [Souza] for slander of title, cancellation of instrument clouding title to real property, civil extortion, intentional interference with contractual relations, intentional interference with prospective economic advantage, breach of fiduciary duty, declaratory relief, accounting, fraud, conversion, and breach of contract. [Citation.]

"On August 11, 2009, [Souza], represented by Cort V. Wiegand, entered into a settlement of *Malik v. Souza* (Settlement). The Settlement required [Souza] to remove the deeds of trust, pay Malik $500,000 in installments, and admit the allegations in the First Amended Complaint in *Malik v. Souza*. The parties also agreed that if [Souza] breached the Settlement, a stipulated judgment (Stipulated Judgment) would be filed. [Citations.]

3

"The Stipulated Judgment states [Souza] fabricated the May 9, 2007 letter and forged Malik's signature. The Stipulated Judgment further states that [Souza] forged the letter to give [Souza] the authority to prepare and record documents against Malik's properties to secure an alleged indebtedness to [Souza]--e.g., create the $4 million promissory notes in favor of himself and record the deeds of trust without Malik's consent. [Citations.]

"On August 31, 2011, the Bureau filed an Accusation against [Souza], seeking to suspend or revoke his real estate license. The Accusation charged [Souza] with fraud, misrepresentation, and/or dishonest dealing and/or negligence or incompetence in performing acts for which he is required to hold a license. The Accusation alleged that [Souza] created the May 9, 2007 letter describing how he was to be compensated by Malik, that [Souza] in 2007 and 2008 executed deeds of trust naming Souza and Associates as the beneficiary, and that [o]n October 2, 2008 [Souza] recorded these deeds of trust with the Stanislaus County Recorder's Office. [Citation.]

"After conducting administrative hearings, the ALJ [administrative law judge] issued a proposed decision on November 19, 2012 revoking [Souza']s real estate license. The ALJ's decision found that [Souza] engaged in a pattern of conduct of fraud, dishonest dealing, negligence and incompetence, and revoked [Souza's] license pursuant to Business and Professions Code section 10176, subdivisions (a), (b), (c)[, and (i)] and section 10177, subdivisions (g) and (j). [Citation.]

"The Real Estate Commissioner adopted the ALJ's decision on December 28, 2012 (Decision). [Citation.] [Souza] petitioned for reconsideration. [Citation.] [Souza's] petition for reconsideration was denied. [Citation.]" (Fns. and bolding omitted.)

In March 2013, Souza commenced this proceeding by filing a petition for a writ of mandate in the superior court seeking to set aside the Bureau's decision. In April 2014, Souza filed a motion to augment the administrative record with a declaration from the

4

attorney who represented him in Malik's civil action against Souza.  The trial court denied the motion to augment and in May 2014, denied the writ petition.  From the judgment entered in June 2014, Souza timely appealed.

DISCUSSION

I

*Standard Of Review*

"A writ of administrative mandate is available 'for the purpose of inquiring into the validity of any final administrative order or decision made as the result of a proceeding in which by law a hearing is required to be given, evidence is required to be taken, and discretion in the determination of facts is vested in the inferior tribunal . . . .' (Code Civ. Proc., § 1094.5, subd. (a).)  The trial court's inquiry in such a case 'extend[s] to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion.'  (Code Civ. Proc., § 1094.5, subd. (b).)  Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence.  (Code Civ. Proc., § 1094.5, subd. (b).)

"When it is claimed the findings are not supported by the evidence, and the trial court, as here, is authorized by law to exercise its independent judgment on the evidence, 'abuse of discretion is established if the [trial] court determines that the [administrative agency's] findings are not supported by the weight of the evidence.'  (Code Civ. Proc., § 1094.5, subd. (c).)  In such a case our review on appeal is limited.  We will sustain the trial court's findings if they are supported by substantial evidence.  [Citations.]  In reviewing the evidence, we 'resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment.'  [Citation.]

"[¶] . . . [¶]

5

"[W]e review independently [any] other claims, that the [administrative agency] exceeded its jurisdiction or failed to afford a fair trial." (*Kifle-Thompson v. State Bd. of Chiropractic Examiners* (2012) 208 Cal.App.4th 518, 523-524.) In such instances, "[t]he trial court's determination of abuse or nonabuse of discretion by the administrative agency is of no concern to the appellate court. The appellate court gives no deference to the trial court's determination. It makes its own determination, de novo." (*Cummings v. Civil Service Com.* (1995) 40 Cal.App.4th 1643, 1652.)

With the foregoing principles in mind, we turn to Souza's arguments on appeal.

II

*Statute Of Limitations*

Souza first contends the administrative charges against him were barred by the statute of limitations in Business and Professions Code[2] section 10101. The trial court disagreed. So do we.

Section 10101 provides as follows: "The accusation provided for by Section 11503 of the Government Code shall be filed not later than three years from the occurrence of the alleged grounds for disciplinary action unless the acts or omissions with which the licensee is charged involves fraud, misrepresentation or a false promise in which case the accusation shall be filed within one year after the date of discovery by the aggrieved party of the fraud, misrepresentation or false promise or within three years after the occurrence thereof, whichever is later, except that in no case shall an accusation be filed later than 10 years from the occurrence of the alleged grounds for disciplinary action."

The accusation here was filed on August 31, 2011. Thus, the first question here is whether the alleged grounds for disciplinary action occurred before or after August 31,

---

[2]     All further section references are to this code unless noted otherwise.

2008 -- three years before the accusation was filed.  If they occurred *after* August 31, 2008, then the accusation was not barred by section 10101.**3**

The accusation alleged that Souza was the designated manager for two limited liability companies of which Malik was the sole member, but Souza could not take any action without Malik's prior written consent.  Despite this limitation, Souza created a fraudulent letter on or about May 9, 2007, that was purportedly signed by Malik and that purportedly addressed "all the different ways [Souza] was to be compensated for his services" and authorized Souza to " 'record the appropriate documents securing' " Souza's five percent interest in all properties belonging to the companies.  Thereafter, on or about May 21, 2007, and on or about January 30, 2008, Souza executed two deeds of trust on behalf of the companies purporting to secure two $4 million promissory notes to "Souza and Associates."  On or about October 2, 2008, Souza recorded both of the deeds of trust.  The accusation alleged that "[t]he acts and omissions of [Souza] as described above constitute the misrepresentation of a material fact, fraud and/or dishonest dealing, and/or negligence or incompetence in performing an act for which he is required to hold a license."  The accusation further alleged that "[t]he facts described above constitute cause to suspend or revoke all licenses and license rights of [Souza] pursuant to the provisions of Sections 10176(a), 10176(b), 10176(c), 10176(i), 10177(g) and/or 10177(j) of the Code."

---

**3**    If the alleged grounds for disciplinary actions occurred *before* August 31, 2008, then the accusation would be time-barred *unless* the charges involved fraud, misrepresentation, or a false promise *and* the accusation was filed within one year after the date of discovery by the aggrieved party of the fraud, misrepresentation, or false promise but not more than 10 years from the occurrence of the alleged grounds for disciplinary action.  Because we conclude the accusation was timely under the three-year limitations period in any event, we need not consider whether it was timely under the one-year-from-discovery provision.

The first four of the foregoing provisions authorize the Bureau to suspend or revoke the license of a real estate licensee where the licensee, while a licensee, "in performing or attempting to perform any of the acts within the scope of this chapter," is guilty of any of the following:

1) "Making any substantial misrepresentation" (§ 10176, subd. (a));

2) "Making any false promises of a character likely to influence, persuade, or induce" (§ 10176, subd. (b));

3) "A continued and flagrant course of misrepresentation or making of false promises through real estate agents or salespersons" (§ 10176, subd. (c)); or

4) "Any other conduct, whether of the same or a different character than specified in this section, which constitutes fraud or dishonest dealing" (§ 10176, subd. (i)).

The last two of the foregoing provisions authorize suspension or revocation of a license when the licensee has done either of the following:

1) "Demonstrated negligence or incompetence in performing an act for which he or she is required to hold a license" (§ 10177, subd. (g)); or

2) "Engaged in any other conduct, whether of the same or a different character than specified in this section, that constitutes fraud or dishonest dealing" (§ 10177, subd. (j)).

For our purposes, it is sufficient that the foregoing provisions authorized the Bureau to suspend or revoke Souza's license for conduct that constituted dishonest dealing. So just what conduct was alleged in the accusation as the grounds for disciplinary action? As stated in the Bureau's decision, "[t]he crux of [the Bureau]'s case [wa]s that [Souza] forged the May 9, 2007 letter and recorded deeds of trust to prevent Malik from selling property until [Souza] was paid according to the terms of that letter." Thus, the wrongful conduct alleged in the accusation that provided the grounds for disciplinary action was: (1) Souza's creation of the fraudulent letter in May 2007; (2) his execution of the deeds of trust in May 2007 and January 2008; and (3) his recording of

8

those deeds of trust in October 2008.  It was this *course of conduct* for which the Bureau sought to discipline Souza, not any one particular act within that course of conduct. Thus, the course of conduct that provided the alleged grounds for disciplinary action against Souza occurred from May 2007 *through* October 2008.  Because the final part of that course of conduct occurred less than three years before the accusation was filed, the accusation was timely under section 10101.

In arguing to the contrary, Souza focuses not on the allegations of the accusation but on the Bureau's decision.  He contends the Bureau "never concluded that the recording of the deeds was a basis for discipline" (underlining omitted) and "[t]herefore the date of the recording of the deeds, no matter when it occurred, cannot form the basis to discipline [his] license."  He further contends that "[s]ection 10101 . . . does not provide for extending the statu[t]e of limitations based on an alleged pattern of conduct."

We are not persuaded.  To the extent Souza focuses on the Bureau's decision rather than the accusation, we are constrained to point out that the three-year period of limitations in section 10101 is triggered by "the occurrence of the *alleged* grounds for disciplinary action" -- that is, the grounds for disciplinary action *alleged in the accusation*.  Thus, our focus in applying the statute of limitations is on the allegations contained in the accusation, and under that analysis -- set forth above -- we have concluded that the accusation was timely filed.

To the extent Souza asserts that "[t]he alleged violations [set forth in the accusation] relate [only] to alleged conduct in May 2007 and January 2008," we disagree. As we have explained, the accusation alleged a *course of conduct* by which Souza attempted to wrongfully interfere with Malik's ability to sell the properties belonging to his two companies by drafting a fraudulent letter authorizing Souza to be compensated with a percentage interest in those properties, then executing two deeds of trust to secure his nonexistent interest in the properties, then recording those deeds of trust to make his nonexistent interest in the properties a matter of record.  Contrary to Souza's position, the

9

recording of the deeds of trust was an integral part of the course of conduct for which the Bureau sought to discipline him, because it was the recording of the deeds that put the cloud on record title to the properties that prevented Malik from freely conveying those properties to others. In other words, the recording of the deeds of trust was a vital component of Souza's scheme to wrongfully wring from Malik compensation to which Malik had never agreed.

Moreover, we disagree with Souza's assertion that in its decision the Bureau "never concluded that the recording of the deeds was a basis for discipline." (Underling omitted.) After finding that Souza "forg[ed] a letter and record[ed] deeds o[f] trust to obtain money from Malik," the Bureau concluded that Souza "engaged in a pattern of conduct of fraud[ and] dishonest dealings . . . by," among other things, "creating false and misleading documents" and "seeking unreasonable and duplicative payments outside the ordinary and usual payments in real estate practice." Souza's recording of the bogus deeds of trust was an essential part of the course of conduct by which he sought from Malik unreasonable and duplicative payments outside the ordinary and usual payments in real estate practice. Thus, the Bureau *did* conclude that the recording of the deeds of trust was part of the basis for imposing discipline on Souza.

As for Souza's argument that section 10101 does not extend the limitations period based on an alleged pattern of conduct, that argument misses the point. The issue in a case like this is not whether the limitations period is *extended* when a pattern of conduct is at issue; the issue is when the limitations period is *triggered* when a pattern of conduct is at issue. Souza's position appears to be that the three-year period is triggered by any discrete action taken by the licensee that is part of a pattern or course of conduct, and the three-year period runs separately as to each discrete action, meaning that the only action in this case for which he could have been disciplined under the three-year period was the recording of the deeds of trust in October 2008 -- which, according to him, the Bureau did not find as a basis for discipline. We have explained already, however, that where --

10

as here -- a course of conduct provides the alleged grounds for discipline, the three-year limitations period is not triggered until that course of conduct is complete, because as long as the course of conduct is ongoing, it is still *occurring*, and the three-year limitations period runs "from the *occurrence* of the alleged grounds for disciplinary action." (§ 10101, italics added.)

This conclusion is consistent with the general purpose of statutes of limitation, which is "to provide repose and to protect persons against the burden of having to defend against stale claims." (*Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 787.) In the context of a civil conspiracy, our Supreme Court has concluded that "[s]o long as a person continues to commit wrongful acts in furtherance of a conspiracy to harm another, he can neither claim unfair prejudice at the filing of a claim against him nor disturbance of any justifiable repose built upon the passage of time." (*Ibid.*) That same reasoning applies when, as here, the Bureau seeks to discipline a real estate licensee for a course of conduct that, taken as a whole, constitutes dishonest dealing. Here, Souza continued in his course of conduct to wrongfully wring from Malik compensation to which Malik had not agreed through at least October 2008, when Souza wrongfully recorded the deeds of trust he had wrongfully executed on behalf of Malik's companies. Souza cannot claim any unfair prejudice from the Bureau's filing of its accusation less than three years later, in August 2011, nor can he claim the disturbance of any justifiable repose built on the passage of time from his signing of the second deed of trust in May 2007, since he continued to engage in his wrongful course of conduct through at least August 2008, with the recording of the deeds of trust.

For all of the foregoing reasons, we find no merit in Souza's argument that the administrative charges against him were barred by the statute of limitations in section 10101.

11

III

*Discipline For Conduct Not Requiring A Real Estate License*

Under section 10176, the Bureau may suspend or revoke the license of a real estate licensee "where the licensee, while a real estate licensee, in performing or attempting to perform any of the acts within the scope of this chapter," engages in conduct described in that section. Similarly, under subdivision (g) of section 10177, the Bureau may suspend or revoke the license of a real estate licensee when the licensee had "[d]emonstrated negligence or incompetence in performing an act for which he or she is required to hold a license." Thus, under the foregoing provisions, the Bureau could impose discipline on Souza only for conduct that required a real estate license.

Applying the foregoing principle, Souza contends he was not subject to discipline here because "[a]t the time of [his] alleged misconduct, [he] was acting as manager of two LLCs" and his actions in that capacity did not require a real estate license. The trial court disagreed, and again so do we.

Souza's argument is without merit because in making it he ignores the fact that the Bureau -- in addition to finding cause to revoke his license under section 10176, subdivisions (a), (b), (c), and (i), and section 10177, subdivision (g) -- found cause to revoke his license under section 10177, subdivision (j). That subdivision allows the Bureau to revoke a real estate license when the licensee has "[e]ngaged in *any . . . conduct . . . that constitutes fraud or dishonest dealing*." (§ 10177, subd. (j), italics added.) In other words, section 10177, subdivision (j) permits the Bureau to impose discipline on a licensee for fraud or dishonest dealing, regardless of whether that fraud or dishonest dealing occurred in the course of conduct that required a real estate license. "Honesty and truthfulness are two qualities deemed by the Legislature to bear on one's fitness and qualification to be a real estate licensee." (*Harrington v. Department of Real Estate* (1989) 214 Cal.App.3d 394, 402.) Applying that principle, it has been said that if offenses committed by an applicant for a real estate license "reflect unfavorably on his

12

honesty, it may be said he lacks the necessary qualifications to become a real estate salesperson." (*Ibid.*) The same reasoning applies to actions by a person who already *has* a real estate license. If the actions of a licensee reflect unfavorably on his honesty, then it may be said that he lacks the necessary qualifications to *continue* as a real estate licensee.

Such was the case here. Among various other findings, the Bureau can be understood to have found that Souza engaged in conduct that constituted fraud and/or dishonest dealing when he drafted a fraudulent letter authorizing him to be compensated with a percentage interest in the properties owned by Malik's companies, then executed two deeds of trust to secure his nonexistent interest in those properties, then recorded those deeds of trust to make his nonexistent interest in the properties a matter of record. Under subdivision (j) of section 10177, it does not matter whether Souza's actions in this regard required a real estate license; he was subject to discipline for fraud and/or dishonest dealing under that subdivision whether a license was required for his actions. Accordingly, we find no merit in Souza's argument that he was not subject to discipline.[4]

IV

*The Bureau's Consideration Of Souza's Admissions*

*In The Settlement Agreement And Stipulated Judgment*

Souza contends that any admissions he made in the settlement agreement and stipulated judgment in Malik's civil action against him that he (Souza) forged the May 2007 letter were *conditional* admissions, and because the condition was never satisfied,

---

[4]     In reaching this same conclusion -- that Souza was subject to discipline under subdivision (j) of section 10177 even if he was not acting as a licensee -- the trial court specifically noted that Souza "d[id] not argue otherwise." The same is true on appeal: Souza simply repeats the arguments he made in the trial court and once again completely ignores the Bureau's power to discipline him under subdivision (j) section 10177 regardless of whether he was engaging in conduct for which a real estate license was required. Under these circumstances, Souza's argument is not simply without merit; it is frivolous.

13

the Bureau could not rely on those admissions in deciding to revoke his license.**5** Whether we view this as a claim that the findings against him are not supported by the evidence (in which case we review the trial court's findings for substantial evidence) or a claim that the Bureau prejudicially abused its discretion in considering these allegedly conditional admissions (in which case we review the Bureau's action independently of the trial court), we find no merit in Souza's argument.

We focus on the Bureau's decision, which lies at the heart of the matter. Souza contends that the "crux" of the Bureau's decision was that he "purportedly admitted to forging the May 9, 2007 letter" in the settlement agreement and the stipulated judgment in Malik's civil action. In essence, Souza's position is that because the evidence of forgery that was the "crux" of the Bureau's decision was not a proper basis for that decision, the decision cannot stand. But Souza is wrong in his assertion that the allegedly conditional admissions in the settlement agreement and the stipulated judgment were the "crux" of the Bureau's decision. What the Bureau said was that "[t]he crux of [its] case [wa]s that [Souza] forged the May 9, 2007 letter and recorded deeds of trust to prevent Malik from selling property until [Souza] was paid according to the terms of that letter." Thus, *the forgery of the letter* was (with the recording of the deeds of trust) the crux of the Bureau's case. In finding that Souza engaged in that forgery, however, the Bureau relied on more than the admissions in the settlement agreement and stipulated judgment. On that point, the Bureau's decision states as follows:

"When confronted with his admission to [the forgery] in a signed settlement agreement and stipulated judgment, [Souza] variously stated that he never read the settlement agreement and judgment, that he signed it only to end the litigation that he could not afford to pursue, that he thought it would be kept confidential, and that it was

---

**5** Specifically, Souza contends he "never adopted, nor intended to adopt those [admissions] unless [he] failed to make the agreed settlement," which he did not do.

14

not signed 'under penalty of perjury.' [Souza]'s excuses are not believable. It is not conceivable that a real estate broker would not read a four-page settlement agreement and a five-page stipulated judgment wherein he was settling a large case and agreeing to pay $500,000. In fact, he specifically referred to portions of the agreement in explaining why he signed it, such as referencing the confidentiality clause and the fact that if he did not make regular payments, the total amount due would be $1 million. [Souza]'s testimony that he did not forge Malik's signature on the May 9, 2007 letter is not credible. Moreover, [Souza] testified that he did, in fact, cut and paste a signature on another document in 2003. He claimed that that action was not forgery because he was simply re-creating an original letter that he had lost. It is certainly not customary business practice to re-create a letter and cut and paste a signature when an original cannot be found. [Souza]'s testimony supports a finding that [Souza] forged the May 9, 2007 letter, just as he had done earlier in 2003."

What we take from the foregoing is that there was much more than the admissions themselves on which the Bureau relied in finding that Souza forged the May 2007 letter. First of all, Malik testified that he did not sign the letter, and in fact he sued Souza on that basis, claiming the letter was fabricated and its substance was false. Second, the Bureau found Souza's testimony denying that he forged the letter "not credible." Third, the Bureau relied on the fact that Souza admitted to previously cutting and pasting a signature on a document, and the Bureau drew the inference that Souza similarly forged the May 2007 letter.

Even if we were to agree with Souza that: (1) the admissions in the settlement agreement and the stipulated judgment were conditional admissions; (2) the condition on those admissions was never satisfied; and (3) therefore the admissions never became operative, he would not be entitled to any relief because the Bureau had several valid

15

reasons (set forth above) for finding that Souza forged the May 2007 letter that did not depend on whether the admissions in the settlement agreement and the stipulated judgment were operative. If we treat Souza's argument on this point as an assertion that the findings against him are not supported by the evidence, we disagree because these additional reasons for finding that he forged the May 2007 letter constitute substantial evidence supporting the trial court's decision on this point, which was that the Bureau's decision was supported by the weight of the evidence. On the other hand, if we treat Souza's argument on this point as an assertion that the Bureau prejudicially abused its discretion in considering the admissions in the settlement agreement and the stipulated judgment, we still disagree because any abuse of discretion in considering those admissions was not prejudicial to Souza because the Bureau would have found that Souza forged the May 2007 letter in any event based on the additional reasons the Bureau gave for finding that he forged the letter that were not dependent on the admissions as such. Accordingly, we reject this argument as well.

V

*Augmentation Of The Administrative Record*

Under subdivision (e) of Code of Civil Procedure section 1094.5, "[w]here the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before respondent, it may enter judgment as provided in subdivision (f) remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."

Here, Souza filed a motion in the trial court seeking to augment the administrative record with a declaration from Cort Wiegand, the attorney who represented Souza in

16

Malik's civil action. In that declaration, Wiegand attested that Souza completed his performance under the settlement agreement in that action in March 2013 and the final settlement check had been cashed by Malik. Wiegand also detailed some of the negotiations that led up to the settlement. In seeking admission of Wiegand's declaration, Souza argued that "[t]he evidence being offered came into existence after the administrative hearing in 2012 and the Real Estate Commissioner's Order Denying Reconsideration of February 20, 2013." He further argued that Wiegand's declaration was relevant because it "goes to the issue of adoptive admissions." He also asserted, without elaboration, that the evidence was relevant "for mitigation of the penalty."

The trial court denied Souza's motion. To the extent Wiegand's declaration addressed the negotiations that led up to the settlement, the court noted that those events occurred in 2009 and thus Wiegand's information "was known and available to [Souza] at the time of the [administrative] hearings." To the extent the declaration addressed Souza's completion of performance under the settlement agreement, the court concluded that information was irrelevant.

"Augmentation of the administrative record is permitted only within the strict limits set forth in the statute. [Citations.] Before the court may properly consider evidence that was not presented at the administrative hearing, the petitioner must show the evidence could not have been produced below had reasonable diligence been exercised. (Code Civ. Proc., § 1094.5, subd. (e).) Determination of the question is within the discretion of the trial court; we will not disturb the exercise of that discretion unless it is manifestly abused." (*Armondo v. Department of Motor Vehicles* (1993) 15 Cal.App.4th 1174, 1180.)

On appeal, Souza contends that evidence of the completion of performance under the settlement agreement could not have been produced in the exercise of reasonable

17

diligence at the administrative hearing. That is true, given that the final settlement payment was not made and accepted until after the administrative hearing was over, but Souza's argument misses the point. The reason the trial court refused to admit Wiegand's declaration to show completion of performance under the settlement agreement was that the court deemed completion of that performance *irrelevant*. We find no prejudicial abuse of discretion in that decision. Essentially Souza contends Wiegand's declaration shows that the conditional admissions in the settlement agreement and stipulated judgment "never became adoptive admissions." But we have explained already that even if the Bureau had not considered those admissions, it would have made no difference because the Bureau still would have found that Souza forged the May 2007 letter. Because the Bureau's consideration of the admissions did not prejudice Souza, it follows that admission of the Wiegand declaration in the trial court would have made no difference either.

To the extent Souza complains that the trial court "never addressed mitigation of penalty or whether or not the penalty was excessive, in light of the fact that [he] paid the full amount of the settlement," Souza is mistaken. In denying Souza's motion to admit Wiegand's declaration, the trial court specifically noted that "[Souza] does not dispute [the Bureau]'s argument that evidence that he made restitution is relevant in re-application proceedings to obtain his license, rather than to mitigate the penalty of license revocation." As appellant, Souza bore the burden of persuading us that the trial court was incorrect in concluding that his completion of payment under the settlement agreement, while relevant to any reapplication he might make for his license, was not relevant to mitigate the penalty of revocation in the first place. Having failed to acknowledge the trial court's conclusion on this point, Souza has necessarily failed to carry his burden of persuading us that the court's conclusion was wrong.

## DISPOSITION

The judgment is affirmed.  The Bureau shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

/s/_____
Robie, Acting P. J.

We concur:

/s/_____
Mauro, J.

/s/_____
Murray, J.